# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

DENTSPLY SIRONA INC.,  VDW GmbH,   *
and MAILLEFER INSTRUMENTS
HOLDING SARL d/b/a DENTSPLY     *
MAILLEFER,

                        *

          Plaintiffs,

                        *

v.                          *

                        *

L I K SUPPLY, CORP,
LIDIYA KAGAN and          *
VLADIMIR PAKHOMOV,

                        *

         Defendants.     *

Civil Action No.: 3:16-CV-0806 (MAD/DEP)

## VERIFIED COMPLAINT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiffs, Dentsply Sirona Inc. ("Dentsply"),[1] VDW GmbH ("VDW"), and Maillefer Instruments Holding Sarl d/b/a Dentsply Maillefer ("Maillefer") (collectively "Plaintiffs"), file this Verified Complaint.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to (1) 28 U.S.C. §§ 1331, 1338(a) and (b); (2) 15 U.S.C. § 1121, as an action for violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; and (3) 28 U.S.C. § 1367(a), pursuant to the principles of supplemental jurisdiction.

---

[1] As the result of a merger agreement between Dentsply International Inc. and Sirona Dental Systems, Inc., on February 29, 2016, Dentsply International Inc. was renamed Dentsply Sirona Inc.  Pursuant to that merger agreement, Dentsply Sirona Inc. was assigned ownership of the trademarks previously registered and owned by Dentsply International Inc.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that Defendants reside or are found in this judicial district and/or a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

### NATURE OF THE ACTION

3.      This is an action for (1) infringement of Plaintiffs' registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;  (2) counterfeiting of Plaintiffs' registered trademarks in violation of Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d); (3) false designation of origin and false representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) deceptive acts and practices and misleading advertising in violation of New York General Business Law Sections 349 and 350; (5) trademark infringement in violation of the common law of the State of New York; (6) unfair competition in violation of the common law of the State of New York; and (7) unjust enrichment.  As described more fully below, Defendants have advertised, promoted, sold, offered for sale, or otherwise contributed to the sale of counterfeit products that infringe certain of Plaintiffs' trademarks including, but not limited to:  DENTSPLY®, Mtwo®, WaveOne®, WaveOne® design and logos, RECIPROC®, ProTaper®, ProTaper Next®, VDW®, Flexofile®, Endo Easy Efficient®, AH Plus Jet®, Maillefer®, ThermaFil®, Colorinox®, and Lentulo®.  Those counterfeit products bear the Plaintiffs' Trademarks (as defined below) or contain spurious designations that are identical with or substantially indistinguishable from Plaintiffs' marks, and therefore Defendants are liable for infringement of Plaintiffs' trademarks.  Defendants' conduct has caused consumer confusion and irreparable injury to Plaintiffs and, unless enjoined, will continue to cause the likelihood of consumer confusion and irreparable injury.  Additionally, Defendants' conduct has caused a

public health risk because the counterfeit medical devices are of inferior quality and already have caused clinical complications in two patients.

4.     Dentsply has used in connection with its dental instruments many trademarks including, but not limited to, the following trademarks: DENTSPLY®, ProTaper®, AH Plus Jet®, WaveOne®, WaveOne® design and logos, ProTaper Next®, ThermaFil®, RECIPROC® and Endo Easy Efficient® (collectively the "Dentsply Trademarks").

5.     VDW has used in connection with its dental instruments many trademarks including, but not limited to, the following trademarks: VDW® and Mtwo®[2] (collectively the "VDW Trademarks").

6.     Maillefer has used in connection with its dental instruments many trademarks including, but not limited to, the following trademarks: Maillefer®, Flexofile®, Colorinox®, and Lentulo® (collectively the "Maillefer Trademarks"). The Dentsply Trademarks, the VDW Trademarks, and the Maillefer Trademarks are collectively referred to herein as "the Plaintiffs' Trademarks."

7.     Plaintiffs have spent substantial time, effort and money advertising and promoting the Plaintiffs' Trademarks and as a result, they have developed significant goodwill and other intangible value.

8.     Capitalizing on Plaintiffs' substantial investment in their Trademarks, Defendants have willfully and knowingly sold both dental instruments and packaging that bear spurious marks that are either identical with or substantially indistinguishable from the Plaintiffs' Trademarks.   Consumers expect that the dental instruments sold in packaging that use the

---

[2] Sweden & Martina is the owner of the registered trademark "Mtwo®".  Sweden & Martina has granted VDW an exclusive license to use the trademark and has executed an Authorization, wherein Sweden & Martina "authorizes VDW to enforce its trademark rights against infringements of third parties judicial and extrajudicial." Authorization, attached as Exhibit 1.

Plaintiffs' Trademarks would be manufactured, sold or licensed by Plaintiffs.   However, Plaintiffs have confirmed that the dental instruments and packaging at issue were not manufactured, sold or licensed by Plaintiffs, but rather are counterfeits sold by Defendants that are of inferior quality.   Thus, consumers are likely to be confused and defrauded by the counterfeit products when they believed that they had purchased genuine products manufactured, sold or licensed by Plaintiffs.

9.      As a direct result of Defendants' wrongful conduct (1) Plaintiffs' reputation and goodwill has been directly and irreparably injured, and will continue to be irreparably injured; (2) Plaintiffs have lost, and are continuing to lose, substantial sales; (3) the purchasing public and consumers have been, and continue to be, deceived because Defendants are passing off counterfeit products as authentic; and (4) the purchasing public and consumers are at risk of health complications because of the inferior quality of the counterfeit products.

10.      This action seeks temporary and permanent injunctive relief and damages for Defendants' infringement of Plaintiffs' intellectual property rights.

## THE PARTIES

11.      Plaintiff Dentsply is a corporation organized under the laws of the State of Delaware with its principal place of business located in York, Pennsylvania.

12.      Plaintiff VDW is a corporation organized under the laws of Germany, with its principal place of business located in Munich, Germany.

13.      Plaintiff Maillefer is a corporation organized under the laws of Switzerland, with its principal place of business located in Ballaigues, Switzerland.

14.     Upon information and belief, Defendant L I K Supply, Corp. is a corporation organized under the laws of the State of New York, with its principal place of business located in Spencer, New York and/or Kew Gardens, New York.

15.     Upon information and belief, Defendant Lidiya Kagan ("Kagan") is a citizen of the State of New York and is the President, Owner and/or Chief Executive Officer of L I K Supply, Corp.  Upon information and belief, Kagan directs, controls and/or participates in the infringing and counterfeiting activities alleged herein.  Upon information and belief, Kagan resides in Spencer, New York.

16.     Upon information and belief, Defendant Vladimir Pakhomov ("Pakhomov") is a citizen of the State of New York and is an officer, manager, employee and/or agent of L I K Supply, Corp.  Upon information and belief, Pakhomov directs, controls and/or participates in the infringing activities alleged herein.  Upon information and belief, Pakhomov resides in Kew Gardens, New York or Brooklyn, New York.


## FACTS

**I.      Plaintiffs' Brand and Products**

17.     Since Dentsply's formation in 1899, it has grown into the largest manufacturer of professional dental products and technologies in the world. With operations in 40 countries, Dentsply distributes its dental products in over 120 countries under some of the most well-established brand names in the dental industry.  Dental professionals worldwide rely on Dentsply to deliver dental and healthcare solutions with a strong focus on quality, innovation, and service.

18.     VDW was formed in 1972 by way of merger with three other manufacturers of endodontic instruments.  Based in Germany, VDW is a global manufacturer and distributor of

state-of-the-art endodontic instruments, and is looked to and relied upon by dental professionals for high quality and innovated products.

19.     Maillefer was formed in 1889 and is based in Ballaigues, Switzerland.  Maillefer is considered the world leader in the design, manufacture and commercialization of dental instruments for the treatment of root canals.  Since 1995, Maillefer has been a part of the global Dentsply family of companies.

20.     Since their inception, Plaintiffs have used a variety of legally-protected trademarks for many years on and in connection with the advertisement and sale of their dental products.

21.     Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Plaintiffs' Trademarks.  As a result, products bearing the Plaintiffs' Trademarks are widely recognized and exclusively associated by dental professionals and other consumers as being high-quality products manufactured and distributed by Plaintiffs.

## II.     The Infringed Trademarks

22.     Plaintiffs hold registrations on the Principal Register of the United States Patent and Trademark Office ("PTO") for the following trademarks:

| Owner | Mark | Registration Number | Class |
|-------|------|---------------------|-------|
| Dentsply Sirona Inc. | DENTSPLY | 42060<br>745903<br>1165378<br>1209417<br>1189707<br>565182<br>2478818 | 10<br>10<br>10<br>3<br>5<br>5,10<br>5,10 |

| Owner | Mark | Registration Number | Class |
|-------|------|---------------------|-------|
| Maillefer Instruments Holding Sarl | Flexofile | 1234487 | 10 |
| Dentsply Sirona, Inc. | ProTaper | 2664044 | 10 |
| Dentsply Sirona, Inc. | AH Plus Jet | 3137121 | 10 |
| Maillefer Instruments Holding Sarl | Maillefer | 0948504 | 7, 8, 10 |
| Maillefer Instruments Holding Sarl | Lentulo | 0853723 | 10 |
| Dentsply Sirona Inc. | WaveOne | 4064570 | 10 |
| Dentsply Sirona Inc. | WaveOne (Stylized) | 4198620 | 10 |
| Dentsply Sirona Inc. | ProTaper Next | 4393907 | 10 |
| Dentsply Sirona Inc. | ThermaFil | 1513500 | 10 |
| Dentsply Sirona Inc. | Endo Easy Efficient | 4425715 | 10 |
| Maillefer Instruments Holding Sarl | Colorinox | 1007826 | 10 |
| VDW GmbH | VDW | 3639107 | 10 |
| VDW GmbH | Mtwo | 4857882 | 10 |
| Dentsply Sirona Inc. | RECIPROC | Application No.: 86/288,739<br><br>Status: Approved | 10 |

| Owner | Mark | Registration Number | Class |
|---|---|---|---|
| | | Registration No. Pending | |

23.   A true and correct copy of the above trademark registrations for the Plaintiffs' Trademarks[3] and the Notice of Allowance for the RECIPROC® mark[4] are attached hereto as Exhibit 2.

24.   Plaintiffs' registrations for the Plaintiffs' Trademarks are in full force and effect and are therefore valid and enforceable.

25.    The registrations of the Plaintiffs' Trademarks are prima facie evidence of their validity and conclusive evidence of Plaintiffs' exclusive rights to use those Trademarks in commerce in connection with their products.

26.   The registrations of the Plaintiffs' Trademarks provide sufficient notice to Defendants of Plaintiffs' ownership and exclusive rights to them.

27.   The Plaintiffs' Trademarks and the goodwill of Plaintiffs' business in connection with which the trademarks are used have been continuously used and have never been abandoned.

28.    Plaintiffs intend to continue to preserve and maintain their rights with respect to the Plaintiffs' Trademarks, and to make use of the Plaintiffs' Trademarks in connection with all aspects of their business.

---

[3] As a result of the merger, Dentsply is updating the name of the owner of the following Dentsply Trademarks from Dentsply International Inc. to Dentsply Sirona Inc.:  42060; 745903; 1165378; 1209417; 1189707; 565182; and 1513500.  Name change requests for these marks have been filed, but are still pending in the PTO as of the date of this filing.

[4] On November 25, 2014, the PTO issued a Notice of Allowance for the RECIPROC® mark. Plaintiff Dentsply intends to timely file a Statement of Use and any other filings necessary for a certificate of registration to issue for this mark.

### III.   Defendants' Sale of Counterfeit Products and Unauthorized Use of Plaintiffs' Trademarks

29.    Defendants have engaged, and continue to engage, in the manufacturing, advertising, promotion, distribution, sales, and/or offering for sale products bearing the Plaintiffs' Trademarks, logos and source-identifying information, and products that are counterfeit and inferior in quality to Plaintiffs' products.  Without authorization, Defendants use the Plaintiffs' Trademarks on their dental instruments and the packaging in which such instruments are sold, as well as in their advertising and promotional materials.

30.    Defendants – via catalogues and the internet (including but not limited to the websites eBay and TradeKey) – offer and/or have offered (and admit to offering) for sale and have in fact sold counterfeit dental products purportedly manufactured by Plaintiffs, bearing the Plaintiffs' Trademarks, logos and source-identifying information.  *See* March 13, 2014 Email from Kagan (attached as Exhibit 3) (email from Defendants to buyers, stating in part: "We are propose [sic] the best material and attractive price from Dentsply Mailifier [sic].  Please compare the prices for original products and replica!!  All replica products have the excellent quantity [sic]!!"); October 19, 2014 Email from Kagan (attached as Exhibit 4) ("We also buy Chinese copy/replica/of Mailifier [sic] products and sell trough [sic] e-bay and to other company [sic] but we make strong notice that this Products id [sic] REPLICA/please see attachment. . . . Please open e-bay – many many company sell Mailifier [sic] products/original and replica and even without any notices[.]"); and Defendants' Undated Catalogue (attached as Exhibit 5) ("DENTSPLY MAILIFIER/original and replica/").

31.    Defendants offer for sale and in fact sell infringing and counterfeit products bearing the Plaintiffs' Trademarks in various countries in Europe including, but not limited to, Spain, Switzerland and Germany (*see* Declaration of Alfons Guggenmos (the "Guggenmos

Decl."), attached as Exhibit 6, at ¶ 19; Declaration of Sascha Johansen (the "Johansen Decl."), attached as Exhibit 7, at ¶ 15), and, Defendants offer for sale, and, upon information and belief, do in fact sell such infringing and counterfeit products in the United States as well.

32.     Defendants are not, and have never been, an authorized manufacturer, retailer, wholesaler, promoter, distributor, licensee, importer or exporter of Plaintiffs' merchandise or goods.

33.     In addition to Defendants' admissions that they willfully and knowingly promote, advertise, and offer for sale counterfeit and infringing products (*see* Exhibits 3 & 4), examinations and analyses of Mtwo® endodontic files sold by Defendants have shown them to be counterfeit, and that the Plaintiffs' Trademarks on the instruments and packaging are not authentic. *See* Guggenmos Decl. (Ex. 6) at ¶¶ 6, 8-11; Johansen Decl. (Ex. 7) at ¶¶ 7-11; Declaration of Nicolas Crevoisier (the "Crevoisier Decl."), attached as Exhibit 8, at ¶¶ 6-18; and October 12, 2015 Laboratory Test Report (the "Laboratory Test Report"), attached as Exhibit 1 to the Crevoisier Decl.

34.     On March 22, 2015, April 6, 2015, May 25, 2015 and July 6, 2015, Medizin und Dentalhandels-GmbH ("MD Trade"), an Austrian distributor of dental products, purchased what were purported to be genuine Mtwo® files on the internet from Defendants.  Declaration of Damasus Stumptner (the "Stumptner Decl."), attached as Exhibit 9, at ¶ 5; LIK Invoices attached as Exhibit 1 to the Stumptner Decl.

35.     In the LIK Invoices, Defendants give the counterfeit products an "Item Number." *See* LIK Invoices attached as Exhibit 1 to the Stumptner Decl.  Among the various Item Numbers listed in the March 22, 2015 LIK Invoice to MD Trade are:   V041234025010;

V041236025025;  V040235025030;  and  V040234025035.  *Id*.  As discussed below, files with these Item Numbers were obtained by Plaintiffs and shown to be counterfeit.

36.   MD Trade resold some of the Mtwo® files that it purchased from Defendants to Pluradent and Proclinic, two other distributors of dental products in Europe.  Stumptner Decl. (Ex. 9) at ¶ 6; Pluradent and Proclinic invoices attached to the Stumptner Decl. as Exhibits 2 and 3, respectively.[5]

37.   On or about August 25, 2015, Dr. Winfried Zeppenfeld ("Dr. Zeppenfeld"), a well-known German endodontist, who purchased files from Pluradent, sent an email with photographs to Markus Borgschulte ("Mr. Borgschulte"), VDW's Head of Research and Development, and to Alfons Guggenmos ("Mr. Guggenmos"), VDW Account Manager.  *See* Declaration of Markus Borgschulte (the "Borgschulte Decl."), attached as Exhibit 10, at ¶ 5; Guggenmos Decl. (Ex. 6) at ¶ 5.  In his email, Dr. Zeppenfeld reported his suspicion that he purchased a counterfeit Mtwo® file from Pluradent, which he described as a "counterfeit." Borgschulte Decl. (Ex. 10) at ¶ 5; Guggenmos Decl. (Ex. 6) at ¶ 5; August 25, 2015 Dr. Zeppenfeld Email, attached as Exhibit 1 to the Guggenmos Decl. and the Borgschulte Decl.  His August 25, 2015 email identified several differences between that file and an authentic Mtwo® file, including differences in size and color.

38.   On or about September 3, 2015, Dr. Zeppenfeld sent Mr. Borgschulte a letter concerning Defendants' counterfeit Mtwo® files and differences between those files and Plaintiffs' authentic files.[6]  In pertinent part, that letter states that the products have the:

---

[5] Exhibit 2 to the Stumptner Decl. are invoices from MD Trade to GLS Logistik GmbH & Co., a logistics company that supplied the fake dental instruments to Pluradent.
[6] The "January 28, 2015" date on Dr Zeppenfeld's letter is a typographical error.  Plaintiffs determined that his letter was actually sent on or about September 2, 2015 because Dr. Zeppenfeld states that he is enclosing the counterfeit instruments with the letter.  Then, on

> Wrong colors, smeared color, stoppers that are not flat on the surface and
> have a rounded edge, wrong diameters, wrong grinding depths, as well as
> tips that are too wide and spatula-shaped in the case of the 25/06
> instruments. I also saw a corroded tip on one instrument.

September 3, 2015 Letter from Dr. Zeppenfeld, attached as Exhibit 2 to the Borgschulte Decl.  In

that letter, Dr. Zeppenfeld also identified the following files that he purchased from Pluradent as

counterfeit Mtwo® files:

> Mtwo 25 mm 25/06 Charge 084346;
> Mtwo 25 mm 30/05 Charge 0711310516; and
> Mtwo 25 mm 35/04 Charge 0711310616 [sic].[7]
> Mtwo 25 mm 10/04 Charge 099683

Dr. Zeppenfeld enclosed the Mtwo® files to Mr. Borgschulte with his letter.  Guggenmos Decl.

(Ex. 6) at ¶ 6; Borgschulte Decl. (Ex. 10) at ¶ 6.

39.    The "charge" numbers identified by Dr. Zeppenfeld are the "charge" numbers in

the Pluradent invoices that pertain to certain instruments that he bought from that company.  The

Pluradent "charge" numbers match the "lot" numbers found on Defendants' infringing and

counterfeit packaging.  For example, as shown immediately below in the highlighted text, charge

number "0711310516" for a size 35/04 Mtwo® file in the Pluradent invoice corresponds with

"Lot 0711310516" on the label for Defendant's counterfeit size 35/04 Mtwo® file.  In addition,

the label that bears "Lot 0711310516" also bears "V04234025035," which is one of the Item

Numbers in the March 22, 2015 LIK Invoice to MD Trade.

---

Friday, September 4, 2015, Dr. Zeppenfeld sent an email stating "We submitted the package on
Wednesday," and September 2, 2015 was the prior Wednesday.   September 4, 2015 Dr.
Zeppenfeld Email attached as Exhibit 11.

[7] Dr. Zeppenfeld incorrectly identified this charge number in his letter, which is actually
"0711310516."





Plaintiffs checked Defendants' lot numbers against VDW's internal reference numbers (what VDW refers to as "batch numbers"), and determined that these files were not authentic.

40.     Dr. Zeppenfeld followed up with Mr. Guggenmos in an email on September 14, 2015, where he explained how he "treated at least two patients who probably suffered damage from these faked instruments."  Guggenmos Decl. (Ex. 6) at ¶ 11; September 14, 2015 Email from Dr. Zeppenfeld to Mr. Guggenmos, attached as Exhibit 6 to the Guggenmos Decl. According to Dr. Zeppenfeld, in one patient, Defendants' counterfeit instrument most likely caused "a ledge in a curved canal. . . which lead [sic] to a guarded prognosis concerning the outcome." *Id*.  During his treatment of the other patient, Dr. Zeppenfeld stated that the fake instrument "fractured" and "could not be removed."  *Id*.   After this event, Dr. Zeppenfeld "checked the tips of these instruments under the microscope and found a spade-shape of the tip which differs quite a bit from the original." *Id*.  He explained to Mr. Guggenmos that "[t]his spade-shape bite a lot more than the original round-trip [sic] and makes it easier to fracture the tip in the canal.  This was the case that made me suspect that the instruments were faked." *Id*.

41.     Mr. Borgschulte was on a business trip when the counterfeit instruments arrived at VDW, so Mr. Guggenmos retrieved the parcel from Mr. Borgschulte's office and delivered it to Sascha Johansen ("Mr. Johansen"), VDW's Brand Manager.  Borgschulte Decl. (Ex. 10) at ¶ 7; Guggenmos Decl. (Ex. 6) at ¶ 7.   The parcel contained the four Mtwo® files that Dr. Zeppenfeld listed in his September 3, 2015 letter.  Johansen Decl. (Ex. 7) at ¶¶ 7-10.

42.     Mr. Guggenmos instructed Mr. Johansen to check the lot or batch numbers on the files sent by Dr. Zeppenfeld to determine whether they were authentic or fake.    *Id*. at ¶ 8.  If the batch numbers on the packaging of the products sold by Defendants did not correspond to VDW's internal batch numbers that would indicate that they are fakes.  *Id*. at ¶ 11.  Mr. Johansen compared the batch numbers of the files received from Dr. Zeppenfeld with VDW's batch numbers and concluded that the four Mtwo® files were not legitimate VDW products.  *Id*.

43.     Plaintiffs also comprehensively examined and tested the counterfeit instruments received from Dr. Zeppenfeld and concluded that, to the naked eye and upon initial examination, the counterfeit instruments look similar to the original, but upon closer "higher quality inspection . . . several differences and defects were . . . observed" including:

- Higher internal core diameter of the cross section

- Strange tip shape observed on the ISO 025 (not well grounded)

- Rounded shape of the depth ring instead of being flat

- Differences on the painting colours used on the shaft

- Painting overfilled on the depth and on the colour rings

- Rounded RA shape compared to the original one

- Diameter at 3 and 13 mm often out of the original drawing tolerance range

- Torque resistance (Mt) clearly higher than the current production range (+35%)

- Similar average torque angle (At) compared to the producti8on range

- Bending resistance (Mf) clearly higher than the current production range (+40%) Meaning lower flexibility

- Lower fatigue resistance (-17%) compared to the original instrument.

Crevoisier Decl. (Ex. 8) at ¶ 15; Laboratory Test Report (Ex. 1 to the Crevoisier Decl.), at pp. 1 & 25.

44.     The overall quality of Defendants' counterfeit instruments do not meet Plaintiffs' high quality standards.   Crevoisier Decl. (Ex. 8) at ¶ 16; Laboratory Test Report; and Dr. Zeppenfeld's September 3, 2015 Letter (Ex. 2 to the Guggenmos Decl. and Borgschulte Decl.).

45.     Defendants' inferior, counterfeit and infringing products are causing health risks

to patients.  *See* Guggenmos Decl. (Ex. 6) at ¶¶ 11-12; and Dr. Zeppenfeld's September 14, 2015

Correspondence (attached as Exhibit 6 to the Guggenmos Decl.).

46.     The patient health risk is so great that VDW issued a press release stating, in part:

Fake Mtwo instruments have been discovered in a dental practice.  The quality of
these products is significantly different from that of the original made by the
manufacturer, VDW in Munich.  At first glance, the fakes are not easy to identify
as the blister packaging and labels are almost identical to the original.  As two
incidents involving the treatment of patients have already been reported, it is
critical to urgently warn dentists against the use of fake products.

The fake instruments have a larger diameter than the original instruments (Fig. 1,
measured at 9 mm from the tip).  This not only reduces the depth of the flutes
(deep flutes prevent debris from accumulating in the canal) but also the flexibility
of the instrument.  Hence, they are more stiff.  Further testing shows that the fakes
have an average of 40% less bending strength than the originals.

This rigidity increases the risks of creating ledges (no uniform conical shape of
canal) and the shifting of the canal axis in curved canals.

Cutting edges and blades of the fake are significantly less clear-cut than the
original.  Flutes for the removal dentine debris are also shallower (higher risk of
debris accumulation in the canal).

The design of the instrument tip deviates significantly from the original (Fig. 2,
ISO size 25/40) which may result in incomplete preparation (reduced working
length).

At 3 mm and 13 mm from the tip, the diameters often exceed the permissible
production tolerance limit.  Hence, the instrument sizes do not correspond with
their ISO sizes, which will result in the over-preparation of the root canal and
difficult fitting of gutta-percha cones for obturation.

The fake instruments are on average 17% less resistant to fatigue than the
originals, posing a higher risk of instrument (fatigue) fractures.

Press Release (attached as Exhibit 12).[8]

---

[8] The Press Release indicates that the tested products were sold by Pluradent.  Pluradent
purchased the products from MD Trade, which in turn purchased them from Defendants.  *See*
Stumptner Declaration (Ex. 9) at ¶¶ 5-6.

16

47.     The counterfeit MTwo® endodontic instruments that Plaintiffs received from Dr. Zeppenfeld were sold by Defendants.  The counterfeit instruments listed by Dr. Zeppenfeld correspond to the counterfeit products identified in the Laboratory Test Report, which provides in pertinent part:

MTwo Instruments fake version

| | |
|---|---|
| MTwo, ISO 010, Article V041234025010 | Lot: 099683 |
| MTwo, ISO 025, Article V041236025025 | Lot: 084346 |
| MTwo, ISO 030, Article V040235025030 | Lot: 0711310516 |
| MTwo, ISO 035, Article V040234025035 | Lot: 0711310516 |

Laboratory Test Report Report (Exhibit 1 to the Crevoisier Decl.).  Moreover, the counterfeit instruments listed by Dr. Zeppenfeld and identified in the Laboratory Test Report correspond to LIK Item Numbers in the LIK Invoices to MD Trade.

48.     On or about October 23, 2015, Messrs. Guggenmos and Johansen went to MD Trade's facilities and met with Damasus Stumptner ("Mr. Stumptner"), the General Manager of MD Trade, and Magister Thomas Rieder, MD's Trade lawyer.  Johansen Decl. (Ex. 7) at ¶ 12; Guggenmos Decl. (Ex. 6) at ¶ 14; and Stumptner Decl. (Ex. 9) at ¶ 4.  During the meeting, Mr. Stumptner gave Mr. Johansen MD Trade's inventory of VDW products.  Stumptner Decl. (Ex. 9) at ¶ 4; Johansen Decl. (Ex. 7) at ¶ 13; Guggenmos Decl. (Ex. 6) at ¶ 15.  Mr. Stumptner advised Mr. Guggenmos and Mr. Johansen that MD Trade purchased these instruments over the internet from Defendants, which is confirmed by Defendants' invoices.  Johansen Decl. (Ex. 7) at ¶ 14; Guggenmos Decl. (Ex. 6) at ¶ 16.

49.     Mr. Johansen took the stock of purported VDW products that were given to him by MD Trade to Plaintiffs' facility in Munich, Germany.  Johansen Decl. (Ex. 7) at ¶ 13; Guggenmos Decl. (Ex. 6) at ¶ 15.  Mr. Johansen compared the batch numbers of the files that he was given by MD Trade to VDW's batch numbers and found that, out of the 1,100 blister packs

of instruments, only 150 blister packs were Plaintiffs' genuine instruments. Johansen Decl. (Ex. 7) at ¶ 13; Guggenmos Decl. (Ex. 6) at ¶ 15. The other 950 blister packs contained counterfeit VDW endodontic files. Johansen Decl. (Ex. 7) at ¶ 13; Guggenmos Decl. (Ex. 6) at ¶ 15.

50. Defendants are aware of the high regard that dental professionals place on Plaintiffs' products, which is why they purposefully have targeted Plaintiffs in their counterfeiting and infringing activities.

51. Defendants have no license, authority or other permission from Plaintiffs to use any of the Plaintiffs' Trademarks in commerce in connection with the manufacturing, advertising, promoting, distributing, selling, and/or offering for sale of the counterfeit and infringing products.

52. Defendants have been advised previously by Maillefer that their conduct is illegal and have been requested to cease and desist. *See* October 1, 2014 Correspondence from Maillefer's counsel (attached as Exhibit 13).

53. Notwithstanding Defendants' representation to Plaintiffs that they would cease and desist their illegal counterfeiting and infringing activity (*see* Kagan's January 14, 2015 Email to Maillefer's counsel (attached as Exhibit 14)), they have failed to do so.

54. Defendants have engaged in the counterfeiting and infringing activities knowingly, willfully, and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or with bad faith, for the purpose of trading on Plaintiffs' goodwill and reputation and the goodwill and reputation of the Plaintiffs' Trademarks and products.

55. Defendants' activities are likely to create confusion, the false impression, or deceive consumers into believing that there is a connection or association between their infringing counterfeit products and Plaintiffs' authentic products.

18

56.     Absent injunctive relief, Defendants are almost certain to continue to manufacture, advertise, promote, import, export, distribute, sell and/or offer for sale the counterfeit infringing products unless otherwise restrained, particularly given that Defendants have been previously made aware of their wrongful counterfeiting and infringing activity, were requested to stop, and refused to do so, even after they represented that they would.

57.     Defendants currently advertise, promote, and offer to sell Dentsply products on the website www.tradekey.com.  Defendants' advertisement states, in pertinent part, "WE SELL RIGHT NOW the different dental supplies/ cosmetic dentistry/ endodontic materials / from . . . DENTSPLY . . . CAD CAM technology hand and rotary endodontic instruments.  We sell just original products in original package.  Every month we are [sic] propose special and promo.  Many items is [sic] present stocks." *See* TradeKey.com Webpage (attached as Exhibit 15).  Also, this advertisement identifies Defendant Pakhomov as "Executive Management" and as the contact person for Defendant L I K Supply, Corp.  *Id.*

58.     Upon information and belief, Defendants advertise, promote, and offer to sell, sell, and have sold counterfeits of Plaintiffs' products that use the Plaintiff's Trademarks on other internet websites.

**IV.     The Likelihood of Confusion and Injury Caused by Defendants' Actions**

59.     The counterfeit and infringing dental products bearing the Plaintiffs' Trademarks appear initially as the original, but upon further inspection, it is clear that the packaging and the instruments promoted and sold by Defendants are counterfeits and are of lesser quality than the dental products manufactured and sold by Plaintiffs.  In fact, when Dentsply Maillefer conducted its test, it noted that "[t]he results of this investigation showed high level of similarities when [we] compared the investigated files to the original version[,]" noting the following similarities:

- NiTi active part coupled with a nickel plated rotary shaft with colour ring and a blue silicone stop similar to the original one

- Similar double S cross section

- Same grinding quality than the original one

- Same silicone stop shape and colour than the original one

- Same handle geometry with same number of ring and same colour ring

Laboratory Test Report, at pp. 1 and 25 (Exhibit 1 to the Crevoisier Decl.).  The Laboratory Test Report went on to note the various differences and defects as set forth in Paragraph 40 above.

60.     As such, purchasers of Defendants' counterfeit and infringing products have been, and likely will continue to be, confused and disappointed with the counterfeits, believing that they have purchased genuine products manufactured and sold by Plaintiffs.  *See* Dr. Zeppenfeld's August 25, 2015 Email (Exhibit 1 to the Guggenmos Decl. and Borgschulte Decl.); Dr. Zeppenfeld's September 3, 2015 Letter (Exhibit 2 to the Guggenmos Decl. and Borgschulte Decl.).

61.     As a result of Defendants' infringement, Plaintiffs are suffering a loss of the goodwill and reputation they have created in the Plaintiffs' Trademarks and brand products and are losing profits from the lost sales of the genuine products.

62.     In addition to the irreparable harm to Plaintiffs, including to their goodwill and reputation, Defendants' infringement also has caused a substantial likelihood of irreparable harm to the public.  The counterfeit and infringing products are of inferior quality, already have caused problems during dental procedures, and will continue to cause such problems, thereby posing a real health risk to the public.

<u>**COUNT I**</u>

**Counterfeiting and Infringement of Registered Trademarks in Violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)**

63.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 62 as if fully set forth herein.

64.     Defendants, without authorization or consent from Plaintiffs, have used counterfeit and infringing marks or spurious designations that are identical with, or substantially indistinguishable from, the Plaintiffs' Trademarks.

65.     Defendants' actions, as set forth above, are intended to cause, and have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public and the trade as to whether Defendants' counterfeit and infringing products originate from, or are affiliated with, sponsored by, or endorsed by Plaintiffs.

66.     Defendants have acted with knowledge of Maillefer's ownership of the Maillefer Trademarks, and upon information and belief, Defendants have acted with knowledge of Plaintiffs' ownership of the Plaintiffs' Trademarks.  Moreover, Defendants have undertaken their counterfeiting and infringing acts maliciously, willfully and with the intent to cause confusion, mistake and deception on the part of the public, to unjustly benefit from the goodwill and reputation of Plaintiffs, the Plaintiffs' Trademarks, and Plaintiffs' products.

67.     Defendants' use of the counterfeit products and the Plaintiffs' Trademarks was willful, intentional, and done with knowledge that the marks used were counterfeit marks, as defined in Section 34(d)(1)(B) of the Lanham Act, 15 U.S.C. § 1116(d)(1)(B).

68.     Defendants' use in commerce, without Plaintiffs' consent, of a reproduction, counterfeit, copy, or colorable imitation of one or more of the Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is

likely to cause confusion or mistake, or to deceive consumers and therefore infringe Plaintiffs' rights in one or more of the Plaintiffs' Trademarks, constitutes trademark counterfeiting and/or infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

69.     Upon information and belief, from their wrongful acts, Defendants have made and likely will continue to make substantial profits and gains to which they are not entitled to in law or equity, and therefore Defendants have been unjustly enriched.

70.     Defendants' actions have caused, and unless enjoined, will continue to cause, irreparable damage, harm and injury to Plaintiffs including, but not limited to, harm and injury to their business reputation and goodwill for which there is no adequate remedy at law. Defendants' actions have caused, and unless enjoined, will continue to cause, public confusion, and substantial and irreparable harm to the public – including the substantial health risk associated with the inferior counterfeit products – for which there is no adequate remedy at law.

71.     Plaintiffs are therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

72.     Pursuant to 15 U.S.C. § 1117(a), Plaintiffs also are entitled to recover damages in an amount to be determined at trial including, but not limited to, the profits made by Defendants on the sale of the counterfeit dental products bearing the Plaintiffs' Trademarks, Plaintiffs' damages, and the costs of this action.

73.     Plaintiffs also are entitled to recover additional treble damages, reasonable attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117(a) and (b) because Defendants' actions were undertaken willfully and with the intent to cause consumer confusion, mistake and deception.

74. Plaintiffs also are entitled, at their election, to recover pursuant to 15 U.S.C. § 1117(c) an award of statutory damages for any use of the counterfeit marks.

## <u>COUNT II</u>

**False Designation of Origin, Trademark Infringement and False Advertising in Violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)**

75. Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 74 as if fully set forth herein.

76. Defendants' acts alleged herein constitute the use in interstate commerce of a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, or false or misleading description of fact, or false or misleading representation of fact, in connection with the sale, or offering for sale, of goods in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Defendants' acts have caused and are likely to continue to cause confusion, mistake, or deceit to consumers and the public as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of the counterfeit and infringing products by Plaintiffs.  In other words, Defendants' actions were intended to cause, have caused, and are likely to continue to cause consumers and the public to believe in error that the counterfeit and infringing products have been authorized, sponsored, approved, endorsed, or licensed by Plaintiffs, or that Defendants are in some way affiliated with Plaintiffs.

77. Defendants' activities as alleged herein were done maliciously, willfully, intentionally and with knowledge that the marks used were counterfeit marks, as defined in Section 34(d)(1)(B) of the Lanham Act, 15 U.S.C. § 1116(d)(1)(B).  Moreover, Defendants have undertaken their wrongful acts maliciously, willfully and with the intent to cause confusion,

mistake and/or deception on the part of the public, to unjustly benefit from the goodwill and reputation of Plaintiffs, the Plaintiffs' Trademarks, and Plaintiffs' products.

78.     Upon information and belief, from their wrongful acts, Defendants have made and will likely continue to make substantial profits and gains to which they are not entitled to in law or equity, and therefore Defendants have been unjustly enriched.

79.     Defendants' actions have caused, and unless enjoined, will continue to cause, irreparable damage, harm and injury to Plaintiffs including, but not limited to, harm to their business reputation and goodwill for which there is no adequate remedy at law.  Defendants' actions have caused, and unless enjoined, will continue to cause, public confusion, and substantial and irreparable harm to the public – including the substantial health risk associated with the inferior counterfeit products – for which there is no adequate remedy at law.

80.      Plaintiffs are therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

81.     Pursuant to 15 U.S.C. § 1117(a), Plaintiffs also are entitled to recover damages in an amount to be determined at trial including, but not limited to, the profits made by Defendants on the sale of the counterfeit dental products bearing the Plaintiffs' Trademarks, Plaintiffs' damages, and the costs of this action.

82.     Plaintiffs also are entitled to recover additional treble damages, reasonable attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117(a) and (b) because Defendants' actions were undertaken willfully and with the intent to cause consumer confusion, mistake and deception.

83.     Plaintiffs also are entitled, at their election, to recover pursuant to 15 U.S.C. § 1117(c) an award of statutory damages for any use of the counterfeit marks.

## COUNT III

### Deceptive Acts and Practices and False and Misleading Advertising in Violation of
### New York Gen. Bus. Law § 349 and § 350

84.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 83 as if fully set forth herein.

85.     The Defendants' actions, as alleged and described herein, and specifically their use of the counterfeit marks in commerce to advertise, promote, market and sell their competing counterfeit products and their false and misleading statements regarding the quality and source of their products, constitute deceptive acts and practices in the conduct of a business, trade or commerce in violation of Section 349 of New York General Business Law.

86.     Defendants have advertised the sale of the counterfeit and infringing products, and are likely to continue to do so, intentionally misleading the public in material respects and failing to reveal material facts creating the false impression that Defendants and their products are authorized by or affiliated with Plaintiffs, causing injury to both the public and Plaintiffs in violation of Section 350 of New York General Business Law.

87.     As a result of Defendants' deceptive practices, Plaintiffs have sustained, and will continue to sustain, economic damage and loss of business, as well as injury to their business reputation, goodwill generally and goodwill particularly in the Plaintiffs' Trademarks.

88.      Defendants' sale of counterfeit products and the use of the counterfeit versions of the Plaintiffs' Trademark were willful, intentional and done with knowledge that the products were counterfeit and the marks used were counterfeit marks.

89.     Upon information and belief, from their wrongful acts, Defendants have made and will likely continue to make substantial profits and gains to which they are not entitled to in law or equity, and therefore Defendants have been unjustly enriched.

90.     Plaintiffs are entitled to recover damages in an amount to be determined at trial including, but not limited to, profits made by Defendants on the sale of their competing counterfeit products using the Plaintiffs' Trademarks, Plaintiffs' damages, reasonable attorneys fees and the costs of this action.

91.     Plaintiffs are further entitled to recover additional treble damages and prejudgment interest because Defendants' willfully and knowingly engaged in the deceptive practices set forth herein with the intent to cause confusion, mistake and deception on the part of consumers.

92.     Plaintiffs also are entitled to injunctive relief because Defendants' actions have caused, and unless enjoined, will continue to cause, irreparable damage, harm and injury to Plaintiffs including, but not limited to, harm to their business reputation and goodwill for which there is no adequate remedy at law.  Defendants' actions have caused, and unless enjoined, will continue to cause, public confusion, and substantial and irreparable harm to the public – including the substantial health risk associated with the inferior counterfeit products – for which there is no adequate remedy at law.

## COUNT IV

### Trademark Infringement in Violation of New York State Common Law

93.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 92 as if fully set forth herein.

94.     The Plaintiffs' Trademarks are valid trademarks under the New York State common law.

95.     The acts of Defendants alleged herein constitute the use, without the consent of Plaintiffs, of a reproduction, copy, or colorable imitation of the Plaintiffs' Trademarks in

connection with the advertisement, promotion, sale, and distribution of products near identical to those offered by Plaintiffs, which use is likely to cause confusion or mistake, or to deceive consumers and therefore infringe Plaintiffs' rights in the Plaintiffs' Trademarks, in violation of Plaintiffs' common law trademark rights.

96.     Defendants' use of the counterfeit versions of the Plaintiffs' Trademarks was willful, intentional and done with knowledge that the marks used were counterfeit marks.

97.     Upon information and belief, from their wrongful acts, Defendants have made and will likely continue to make substantial profits and gains to which they are not entitled to in law or equity, and therefore Defendants have been unjustly enriched.

98.     Defendants' actions have caused, and unless enjoined, will continue to cause, irreparable damage, harm and injury to Plaintiffs including, but not limited to, harm to their business reputation and goodwill for which there is no adequate remedy at law.  Defendants' actions have caused, and unless enjoined, will continue to cause, public confusion, and substantial and irreparable harm to the public – including the substantial health risk associated with the inferior counterfeit products – for which there is no adequate remedy at law.

99.      Plaintiffs are entitled to recover damages (whether direct or indirect) including, but not limited to, the profits made by Defendants on the sale of the counterfeit products bearing the Plaintiffs' Trademarks, Plaintiffs' damages, reasonable attorneys fees and the costs of this action.

100.    Plaintiffs also are entitled to injunctive relief because Defendants' actions have caused, and unless enjoined, will continue to cause, irreparable damage, harm and injury to Plaintiffs including, but not limited to, harm to their business reputation and goodwill for which there is no adequate remedy at law.  Defendants' actions have caused, and unless enjoined, will

continue to cause, public confusion, and substantial and irreparable harm to the public –
including the substantial health risk associated with the inferior counterfeit products – for which
there is no adequate remedy at law.

## COUNT V

### Unfair Competition in Violation of New York State Common Law

101.  Plaintiffs reallege and incorporate by reference each and every allegation
contained in Paragraphs 1 through 100 as if fully set forth herein.

102.  Defendants' conduct, as alleged herein, constitutes unfair competition under New
York State common law.  Defendants' acts have resulted in the "passing off" of Defendants'
products as those of Plaintiffs, or as somehow related or associated, or sponsored or endorsed by
Plaintiffs.

103.  Defendants' misappropriation of Plaintiffs' name, brand, trademark, reputation
and goodwill is likely to cause confusion or to deceive consumers as to the origin of the
counterfeit/infringing products, which constitutes unfair competition under New York State
common law.

104.  Defendants' use of the counterfeit versions of the Plaintiffs' Trademarks was in
bad faith, willful, intentional and done with knowledge that the marks used were counterfeit
marks.

105.  Upon information and belief, from their wrongful acts, Defendants have made and
will likely continue to make substantial profits and gains to which they are not entitled to in law
or equity, and therefore Defendants have been unjustly enriched.

106.  Defendants' actions have caused, and unless enjoined, will continue to cause,
irreparable damage, harm and injury to Plaintiffs including, but not limited to, their business

reputation and goodwill for which there is no adequate remedy at law.  Defendants' actions have caused, and unless enjoined, will continue to cause, public confusion, and substantial and irreparable harm to the public – including the substantial health risk associated with the inferior counterfeit products – for which there is no adequate remedy at law.

107.    Plaintiffs also are entitled to recover damages (whether direct or indirect) including, but not limited to, the profits made by Defendants on the sale of the counterfeit products bearing the Plaintiffs' Trademarks, Plaintiffs' damages, attorneys fees, and the costs of this action.

## COUNT VI

### Unjust Enrichment

108.    Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 107 as if fully set forth herein.

109.    Defendants, by their actions described herein, have misappropriated for their own use and gain Plaintiffs' intellectual property.

110.    Upon information and belief, Defendants plan to continue to use Plaintiffs' intellectual property.

111.    Upon information and belief, from their wrongful acts, Defendants have made and will likely continue to make substantial profits and gains to which they are not entitled to in law or equity.

112.    As a result of Defendants' wrongful acts, Defendants have been unjustly enriched to Plaintiffs' detriment in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

A.  Adjudicating that Defendants have:

    (1)  violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    (2)  violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

    (3)  violated Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), willfully, intentionally and with knowledge that the marks used were counterfeit marks;

    (4)  violated Section 349 of New York's General Business Law;

    (5)  violated Section 350 of New York's General Business Law;

    (6)  engaged in trademark infringement in violation of New York State common law;

    (7)  engaged in unfair competition in violation of New York State common law; and

    (8)  been unjustly enriched in violation of New York State common law.

B.  Granting a temporary restraining order, and a preliminary and a permanent injunction, pursuant to Federal Rule of Civil Procedure 65, 15 U.S.C. § 1116(a), N.Y. Gen. Bus. Law § 349(h), the common law of the State of New York, and any other applicable authority, restraining and enjoining Defendants and their officers, agents, employees, assigns, successors-in-interest, and attorneys, and all those persons or entities in active concert or participation with Defendants who receive notice of the order by personal service or otherwise, from:

(1) Manufacturing, importing, exporting, purchasing, advertising, marketing, promoting, supplying, distributing, offering for sale, and/or selling any products that bear the Plaintiffs' Trademarks, and/or any other mark or design element substantially indistinguishable from or identical with the Plaintiffs' Trademarks including, without limitation, infringing or counterfeit products purporting to be Plaintiffs' products, and engaging in any other activity constituting an infringement on any of Plaintiffs' rights in the Plaintiffs' Trademarks;

(2) Using in any manner the Plaintiffs' Trademarks or any reproduction, counterfeit, copy, colorable imitation, or confusingly similar variation thereof;

(3) Engaging in acts that constitute infringement, unfair competition, false representation, or false designation of origin under federal or state trademark laws;

(4) Inducing, encouraging, instigating, assisting, aiding, abetting or contributing to any of the aforesaid acts set forth in paragraphs B(1)-(3); and

(5) Communicating about this action with any customers, potential customers, suppliers, potential suppliers, or any other persons or entities in active concert or participation with Defendants concerning the acts complained of herein.

C. An Order requiring Defendants to maintain all books and records of their business including, but not limited to invoices, receipts, contracts, purchase orders, customer lists, advertisements, catalogues, offers to sell, and any other documents concerning the acts complained of herein.

D.  An Order requiring Defendants to take any actions as may be directed by this Court for the purpose of attempting to remediate any consumer confusion or any loss of goodwill suffered by Plaintiffs as a result of Defendants' wrongful acts;

E.  An Order requiring Defendants to recall from any distributors, wholesalers, retailers, customers, and others and deliver to the Court any and all counterfeit and infringing goods, products, advertisements, promotional and marketing materials, and packaging that display the Plaintiffs' Trademarks, as well as all equipment or other means used for making same.

F.  An Order requiring Defendants to file with this Court and to serve on Plaintiffs within thirty days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

G.  An Order directing such other and further relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any counterfeit and infringing product at issue in this action has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered for sale, and/or sold by Defendants has been authorized by Plaintiffs, or is related in any way with Plaintiffs and their products.

H.  An Order requiring

  (1) Defendants to account for and pay over to Plaintiffs an amount equal to three times all of Defendants' profits, gains, savings, and advantages derived from their unlawful conduct, and to the full extent provided for by Section 35(a) of the Lanham Act, 15 U.S.C. 1117;

(2) As an alternative to awarding profits under Section 35(a), awarding Plaintiffs' statutory damages as provided for by Section 35(c) of the Lanham Act, 15 U.S.C. 1117 (c);

(3) Defendants to pay over to Plaintiffs an amount equal to three times Plaintiffs' actual damages suffered as a result of Defendants' infringing activities (*see* 15 U.S.C. 1117);

(4) Defendants to reimburse Plaintiffs' attorneys' fees and costs incurred as a result of Defendants' infringing activities, including all attorneys' fees and costs incurred in this action, to the fullest extent provided for by law, including pursuant to Section 35 of the Lanham Act, 15 U.S.C. 1117 and Section 349 of New York's General Business Law;

(5) Awarding Plaintiffs punitive damages to the fullest extent provided by law;

(6) Awarding Plaintiffs' pre-judgment and post-judgment interest on any monetary award made part of the judgment against Defendants; and

(7) Awarding Plaintiffs such additional and further relief as the Court deems just and proper.

Dated:  July 5, 2016                         Respectfully submitted,

**BOND, SCHOENECK & KING, PLLC**

By:    */s/ Kate I. Reid*
        Kate I. Reid (Bar Roll No. 517408)
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile:  (315) 218-8100
Email: kreid@bsk.com

**GOODELL, DEVRIES, LEECH & DANN, LLP**

By*:*    */s/ Matthew D. Kohel*
        Matthew D. Kohel (Bar No. 519732)
        Richard M. Barnes (*pro hac vice* admission pending)
        Cheryl Zak Lardieri (*pro hac vice* admission pending)
One South Street, 20th Floor
Baltimore, Maryland  21202
Telephone: (410) 783-4000
Facsimile: (410) 783-4040
Email: mkohel@gdldlaw.com
Email: rmb@gdldlaw.com
Email: clardieri@gdldlaw.com
**COUNSEL FOR PLAINTIFFS**

## VERIFICATION

I, <u>Lindi Barton-Brobst</u>, Associate General Counsel for Dentsply Sirona, one of the Plaintiffs in this action. I have read the foregoing Verified Complaint and declare under the penalty of perjury under the laws of the United States of America that the foregoing facts are correct and true to the best of my knowledge and belief and that those factual matters that are stated upon information and belief are believed by me to be true.

Dated: June 28, 2016
York, Pennsylvania